# Chicago, B. & Q. R. R. Co. v. Anton Murowski, for the use of Leo Roeder.

1. APPELLATE COURT PRACTICE—*New Points in the Reply Brief.*— Any point not made in an opening brief is regarded as abandoned, and can not be made for the first time in a reply.   New questions raised by the reply will not be noticed.

2. NEGLIGENCE—*A Question for the Jury.*—The existence or non-existence of negligence is ordinarily a question of fact to be determined by the jury.

3. SAME—*When a Question of Fact.*—Where the evidence on material facts is conflicting, or where, on undisputed facts, fair-minded men of ordinary intelligence may differ as to the inference to be drawn, or where, on even a conceded state of facts, a different conclusion would reasonably be reached by different minds, with all the facts considered, if there is a reasonable chance of conclusion differing thereon, negligence is a question of fact for the jury.

4. SAME—*When a Question of Law.*—Where, from the facts admitted or conclusively proved, there is no reasonable chance of different minds reaching different conclusions, or if a single material fact is conclusively shown or uncontradicted, the existence or non-existence of which is conclusive of a right of recovery, negligence is a question of law.

5. SAME—*As a Question of Law—Application of the Doctrine.*— Where a person, upon a railroad in a city, sees an engine standing upon the track near him, he may reasonably rely upon the statute and ordinance which require warning of its starting to be given by the ringing of its bell, or sounding of its whistle, and the court can not say that his conduct is *per se* negligence, as a matter of law, within the rule stated.

6. SAME—*As a Matter of Law—Duty of the Court.*—While it is not difficult to state a general rule as to what will constitute negligence as a matter of law, it is exceedingly difficult to state a particular set of circumstances constituting such legal negligence, and therefore, except in the plainest of cases, it is the court's duty to leave the question to the determination of the jury.

7. ORDINARY CARE — *Determination of What a Prudent Person Should Do for His Own Safety.*—It seems to be impossible that there should be a rule of law as to what particular thing a person is bound to do for his protection, in the diversity of cases constantly arising, and the question what a reasonably prudent person would do for his own safety, under like circumstances, must be left to the jury as one of fact.

Trespass on the Case, for personal injuries.   Trial in the Superior Court of Cook County; the Hon. JONAS HUTCHINSON, Judge, presiding.

Verdict and judgment for plaintiff. Appeal by defendant. Heard in the Branch Appellate Court at the March term, 1898. Affirmed. Opinion filed November 18, 1898.

CHESTER M. DAWES and FRANK O. LOWDEN, attorneys for appellant.

BRANDT & HOFFMANN, attorneys for appellee.

MR. JUSTICE SHEPARD delivered the opinion of the court.

This suit was brought to recover damages for a personal injury alleged to have been sustained by the plaintiff, Anton Murowski, by reason of the alleged negligence of the appellant. The point is made by the appellant in its reply brief, for the first time, that a new trial must be granted, " because the real plaintiff, Leo Roeder, had no interest in the cause of action."

Such question was not raised in any manner in the Superior Court, nor is it presented upon the record here, unless it may be said that one of the written reasons for a new trial, and one of the assignments of error, that " the verdict is contrary to the law and the evidence," does so.

No reference whatever is made to the question in the opening brief of appellant, and, as already said, it is raised for the first time in the reply brief. The only reason given for not making the point earlier, is that " after the original brief of appellant was written, the Supreme Court handed down its decision in the case of North Chicago Street Railway Company v. Ackley." (171 Ill. 100.)

We need not discuss whether the assignment of error in this court, or the reason for new trial in the court below, that " the verdict is contrary to the law and the evidence " (confessedly the only basis for the point), is sufficiently specific or not (W. C. St. R. R. Co. v. Krueger, 168 Ill. 586; Railway, etc., Benefit Ass'n v. Leonard, 62 Ill. App. 479), nor whether the addition to a plaintiff's name, that he sues for the use of another, is mere surplusage, as between the plaintiff and defendant, when there is nothing by way of fact, in pleading or evidence, to show that the named usee

had any interest in the suit. Firemen's Ins. Co. v. Barnsch, 59 Ill. App. 78; same case, 161 Ill. 629, and cases cited.

We prefer to place our decision upon the ground that the opening brief of appellant does not mention any such error, and that failure in that regard is a waiver of the point. Any point not made in an opening brief is regarded as abandoned and can not be made for the first time in a reply. "New questions raised by the reply will not be noticed." Schumacher v. Bell, 61 Ill. App. 644; Armstrong v. Barrett, 46 Ill. App. 193; Lauder v. P. A. & T. Soc., 71 Ill. App. 481; McDaneld v. Logi, 143 Ill. 487; Ætna Iron Works v. Owen, 62 Ill. App. 603.

The scene of the accident was on appellant's tracks, immediately in front and north of a gate opening from a " private railroad street," claimed by appellant to be its private right of way, through a high fence that surrounds the McCormick reaper works. Such gate was in the north side of the fence, and was at, or directly opposite, the south end of Oakley avenue, a public highway having for its southern terminus the said railroad street, or the fence along the south side of said railroad street. In other words, Oakley avenue either stops at its opening into said railroad street, or extends across said street to the McCormick fence in which the gate exists.

Two counts allege that when injured, the appellee was upon Oakley avenue; another count alleges that appellee was standing upon one of appellant's tracks near Oakley avenue, and another, that he was upon a public place where persons, to the knowledge of appellant, were accustomed to congregate, and that a locomotive upon appellant's track near to such place, ran him down and injured him.

Appellant, to sustain its contention of private ownership of the right of way where appellee was struck, introduced in evidence a quit-claim deed to itself, conveying said railroad street from the old Pan Handle tracks, eastwardly through and beyond the " Reaper addition to Chicago; its claim of title under said deed; its payment of taxes upon such property for many years and its occupancy thereof by its tracks.

A plat of said Reaper addition was also introduced in evidence by appellant, upon which said "private railroad street" appears, and is marked by that name, and is shown to be eighty feet in width, and to be the northerly boundary so far as the plat extends (a distance of at least half a mile through said Reaper addition), of large lots or blocks extending back to and having for their southerly boundary one of the branches of the Chicago river.

For a distance of at least three-eighths of a mile along said railroad street there is no access from the north to the property lying between such street and said river branch, except over said street and the tracks laid in it, and it is upon a part of the property so situated that the reaper works are located, having, as already said, a gate opening upon said railroad street opposite the opening into said street of Oakley avenue from the north.

If we assume that the weight of evidence establishes that Oakley avenue does not extend, as a public highway, across said railroad street, but ends with its opening into said street, and that the accident occurred upon the private right of way, still it does appear, beyond dispute, that appellant's tracks and right of way were at that point planked from the McCormick fence to the end of Oakley avenue, in substantially the same manner as street crossings are usually planked when intersected by railroad tracks, and had been in that condition for at least eleven years. Such planking was put in and maintained by the McCormick Company, presumably to afford easy access to its entrance, through said gate, to its reaper works. It was shown by one of appellant's witnesses, an assistant manager for the reaper works, that there was no way of men coming into the works except by crossing the tracks and through the gate, and that "in the neighborhood of eighteen hundred men" cross and enter there every morning between half past six and seven o'clock. By the same witness, and also by others, it was shown, and it is not disputed, that numbers of men in search of employment, not regular employes in the reaper works, were accustomed to congre-.

gate upon the tracks and right of way in front of the gate entrance to the works every morning, and to stand around there in the hopes of being hired, and that it was the custom of the managers of the works to go outside of the gate whenever they needed extra help and there hire it. Such custom, both by men and bosses, had existed for a long time.

According to the case made by the appellee, he had gone there on the morning in question to get a jo; bhe had previously worked as a laborer in the foundry; he took a position upon the tracks in front of the gate; when he took such position he knew of and had seen a locomotive standing twenty or twenty-five feet east of the crossing, headed toward him; a few minutes afterward the locomotive started up suddenly, without signal, and ran against him, throwing him, and cutting off his foot and leg near his ankle.

The theory of the defendant, supported by the testimony of its witnesses, was that the plaintiff was injured while attempting to board a moving freight train passing over the crossing.

The first point made by appellant is that appellee " was not upon a public highway at the time he was injured, and at most was a bare licensee," and the conclusion of the argument upon the point is, that appellant owed no other duty to appellee than to refrain from willfully or wantonly injuring him.

In addition to our previous description of the place and its surroundings there does not appear to have been anything to indicate that the planked crossing was upon private property, or that the public had not a right to cross there. On the contrary, the planking being in apparent continuation of Oakley avenue to the McCormick fence and gate, and the crossing being used daily by such great numbers of persons, the inference of an observer, or of one having business at the reaper works, would naturally be that he might rightfully cross into the works without making himself subject to the risks of a trespasser.

Furthermore, the inference is strong, from all the proved

circumstances, that the crossing was made and maintained with the consent of appellant; and considering also the evidences furnished by the plat, it is not certain that all the owners of property fronting upon the "private railroad street" and running back to the river, including the McCormick Company, and all persons having business with them, have not the right, with or without the consent of appellant, to cross such street and the tracks laid therein.

The jury had the right to consider all such matters in determining, as a fact, whether appellee were a trespasser or not when injured. This court clearly can not say that, under the evidence, the appellee was a trespasser, as a matter of law.

Considering the whole record upon the question of the crossing we are unable to agree with appellant that, as a legal proposition, appellant owed the appellee no duty except not to injure him wantonly or willfully. See I. C. R. R. Co. v. Ebert, 74 Ill. 399; I. C. R. R. Co. v. Frelka, 110 Ill. 498; C. & A. R. R. Co. v. Sanders, 154 Ill. 531.

The next point argued by appellant is, that appellee was guilty of contributory negligence, and hence is precluded from a recovery. The existence or non-existence of negligence is ordinarily a fact to be determined by the jury. " Where the evidence on material facts is conflicting, or where, on undisputed facts, fair-minded men of ordinary intelligence may differ as to the inference to be drawn, or where, on even a conceded state of facts, a different conclusion would reasonably be reached by different minds, in all such cases negligence is a question of fact. With all the facts considered, if there is a reasonable chance of conclusions differing thereon, then it is a question for a jury." But negligence may become a question of law where "from the facts admitted or conclusively proved, there is no reasonable chance of different reasonable minds reaching different conclusions," or, "if a single material fact is conclusively shown or uncontradicted, the existence or non-existence of which is conclusive of a right of recovery." Wabash Ry. Co. v. Brown, 152 Ill. 484; also C. & N. W. Ry. Co. v. Hansen, 166 Ill. 623.

Admitting it to be true, as, under the testimony in behalf of appellee we probably must, that appellee reached the scene of the accident from five to ten minutes before the occurrence, and that he had seen and knew an engine, headed toward him, was standing about twenty or twenty-five feet from the crossing, and that he remained standing upon one of the four or five tracks there passing over the crossing, in conversation with one or more of the men about him, lighting and smoking his pipe in the meantime, and looking in a direction away from the engine, up to the moment he was struck, we can not say that such conduct was *per se* negligence, as a matter of law, within the rule above stated. It is impossible to separate appellee's conduct, as stated, from his surroundings and the other evidence in the case, some of which tended to excuse or justify his conduct. The place was a much frequented one. There were numerous other persons standing about in full view of the engineer. The engine, when observed by appellee, was standing still, and appellee might reasonably rely upon the statute and ordinance which required warning of its starting or running to be given by the ringing of its bell, or sounding of its whistle. There was evidence tending to show that no bell was rung or whistle sounded.

While it may not be difficult to state a general rule as to what will constitute negligence, as a matter of law, it is exceedingly difficult to state a particular set of circumstances constituting such legal negligence, and therefore, except in the plainest of cases, it is the court's duty to leave the question where the law leaves it, to the determination of the jury. The Supreme Court has lately said in a railroad crossing case, "It seems to us to be impossible that there should be a rule of law as to what particular thing a person is bound to do for his protection in the diversity of cases that constantly arise, and the question what a reasonably prudent person would do for his own safety under like circumstances must be left to the jury as one of fact."

And the rule as there stated is applied to the case of an injury at a railroad crossing, because, as said, it can not be denied that there may be circumstances which may mislead

the one injured, or some neglect of the railway company which may excuse his conduct. C. & N. W. Ry. Co. v. Hansen, 166 Ill. 623.

There is much insistence by appellant that the verdict was manifestly against the evidence. Exclusive of the appellee six witnesses testified to being present and witnessing the accident, and their testimony is substantially alike, and in all respects sustains the theory of appellee's case. Unless we discard the testimony of all these witnesses, for some reason which the record furnishes no good ground for, we are bound to uphold the verdict. Where six witnesses testify to a material set of facts, of which no contradiction exists, except in the fact that other witnesses, no more credible in the eye of the law than they are, testify differently, and the verdict of the jury is upheld by the trial judge, it is not the proper province of an appellate tribunal to overturn the verdict and judgment.

Complaint is urged against the conduct of appellee's counsel at the trial, and error is alleged to exist in the rulings of the court thereon. We must dismiss the subject with the remark that we discover no error in the rulings of the court in such respect. The instructions that were given at appellant's instance seem to cover every phase of the case, and were as favorable to the appellant as it was entitled to have; and there was no substantial error in modifying or in refusing others. The appellee offered no instructions.

Excessiveness of damages is assigned for error, but not being argued, is not considered by us.

Upon the whole record the judgment will be affirmed.